## THE WASP.[1]

### HUDSON et al. v. THE WASP.

*(District Court, E. D. New York. March 3, 1888.)*

SALVAGE—WHAT CONSTITUTES—PERIL.

The barge Wasp, while being towed up the Atlantic coast by the tug America, encountered a gale, and was anchored inside the Delaware breakwater, the America anchoring about half a mile distant. The water becoming rougher, the Wasp, desirous of changing her position, signaled to the America. Her signal was answered by the tug McCaulley, which went to her, and was informed,—according to the McCaulley's story,—that she had 18 inches of water in her hold. The McCaulley thereupon notified the America, and was told, —as the McCaulley's witnesses testified,—that the America would not go to the assistance of the barge, whereupon the McCaulley returned, and towed her to a place of safety. On these facts the McCaulley claimed to have performed a salvage service, asserting that the refusal of the America to go to the Wasp put the latter in great peril, and that without the aid of some tug the barge would have sunk at her anchor. The Wasp asserted that she had no water in her of any consequence, and that the McCaulley was not told that she had 18 inches; while the America swore that she had never refused to go to the aid of the Wasp, but had told the McCaulley that she would go as soon as she could get up her anchors. *Held*, on the evidence, that the America had not refused to go to the barge, and, as she was bound by her towing contract to render this service, the Wasp was at no time in peril; that the McCaulley's service was therefore not a salvage service, and the libel should be dismissed.

In Admiralty.

*Goodrich, Deady & Goodrich*, for libelants.

*Samuel Park* and *Butler, Stillman & Hubbard*, for claimants.

BENEDICT, J. This is an action against the barge Wasp, to recover for a salvage service claimed to have been rendered that barge in December, 1885, by the tug McCaulley. It appears that in December, 1885, the tug America, while engaged in towing the barge Wasp and the barge

Reported by Edward G. Benedict, Esq., of the New York bar.

Hornet from Norfolk, Va., to New London, Conn., met with heavy weather, which caused her to take her tow into the Delaware breakwater for safety, where she anchored the Wasp about half a mile from the breakwater. A gale from the north-east came on, and afterwards, on the morning of the 27th of December, the wind shifted to the north-west, blowing heavily, and raising a rough sea at the place where the Wasp was anchored. The barge labored in the sea, and one or two of her hatches were stove in, whereby some water passed into her hold. She had on board a competent crew, was not leaking, and her pumps kept the water under control. Her master, however, determined that it was wise to have her moved to a safer location near the ice-breaker, and at about 8 or 9 o'clock on the morning of the 27th set a signal in his rigging to call the tug America to him for the purpose of being moved by her. At this time the America was at anchor about a half a mile away, with sufficient steam up to enable her to navigate. There was also about the same distance away another tug, called the McCaulley. This latter tug, on seeing the signal on board the Wasp, proceeded to her, and tendered her services. According to the testimony of those on board the Wasp, her services were declined, but she was requested to go to the America, and inform her that the Wasp desired to be towed up to the ice-breaker before the tide changed. After having spoken the Wasp, the McCaulley proceeded to the America, and there had a conversation with the master of the America about which there is a conflict of testimony. It resulted, however, in the McCaulley's returning to the Wasp, taking a hawser from her, and holding her up to her anchors until one of her anchors was secured, and then towing her, with one anchor down, to a place near the ice-breaker, where she was sheltered from the wind and waves. This service occupied from one to three hours, according to the estimates. It involved no extraordinary peril to the McCaulley, and was of benefit to the Wasp. The peculiarity of the case consists in this. According to the testimony of the captain of the McCaulley, when he spoke the Wasp the master of the Wasp informed him that she had 18 inches of water in her, and requested him to inform the master of the America of that fact. When he reached the America he did report that fact to the captain of the America, and thereupon the master of the America refused to go to the Wasp, but told the McCaulley to go to her, and do what he could. Accordingly the libelant contends that the refusal of the America to go to the Wasp placed the Wasp in great peril, because without the aid of some tug the Wasp would have sunk at her anchor; that the McCaulley was the only tug able to relieve her, and, having done so, is entitled to salvage reward. On the part of the Wasp the evidence is that she had no water in her of any consequence; that the captain of the McCaulley was not told that she had 18 inches of water in her; that the services of the McCaulley were declined in the first instance, and only accepted in the end because of the further statement of the master of the McCaulley that the captain of the America had directed him to take the Wasp to the ice-breaker. There is also a sharp conflict as to what passed between the McCaulley and the captain

of the America at the time the McCaulley went to the America. The master of the America swears that he never refused to go to the Wasp, but, on the contrary, asserts that when the McCaulley came to him he informed the captain of the McCaulley that he would go to the Wasp as soon as he could get up his anchors; and upon the representation of the master of the McCaulley that the Wasp had already 18 inches of water in her, and was in a sinking condition, he directed him to return to the Wasp, and hold her up to her anchors until the America should come. If the statements of the master of the America be true, there was no peril in the situation of the Wasp, because there was time enough to enable the America to remove her to the ice-breaker before the tide changed, and the America was bound to render this service by reason of her contract of towage.

In determining this issue of fact, some things bearing upon the credibility of witnesses are to be noticed. For instance, the master of the McCaulley states that the master of the America gave as his reason for refusing to go to the Wasp that he had as much as he could do to take care of himself. Such a statement would be palpably false when made, for the America was in no danger, and able to take care of herself without difficulty. It does not seem probable that a statement so evidently false would have been made. The master of the McCaulley also says that the master of the America assigned as a reason for sending the McCaulley to the Wasp that the Wasp would sink before the America could get to her anchors. Such an impression had no foundation in fact, and if formed by the master of the America must have been created by statements made by the captain of the McCaulley tending to give an exaggerated account of the condition of the Wasp. Taking these features into consideration, in connection with the other statements of the witnesses, I have arrived at the conclusion that the America did not refuse to go to the Wasp, as asserted by the McCaulley, but, on the contrary, was willing to go to her, and would have gone to her and moved her as the McCaulley did, before the tide changed. This conclusion is decisive of the case, for if the America was willing to go to the Wasp, and able to remove her before the tide changed, being bound by her towing contract to render this service, the Wasp was in no peril; and the service rendered by the McCaulley was not a salvage service. If the case of the McCaulley were otherwise free from objection, it might be proper to allow her towage compensation for the time employed, notwithstanding the fact that the only claim set forth in the libel is for salvage. But the claim for salvage is made by the libel to depend upon the fact of a refusal by the America to do her duty to the Wasp; and when an assertion like that is found to be contrary to the fact, I do not think it proper to allow her towage even. I have not passed without notice the paper signed by the master of the Wasp the next morning. That paper, however, was signed under the impression that the America had refused to go to the Wasp, and had sent the McCaulley. It has no tendency to confirm the assertion made by the master of the McCaulley that the America had refused to go to the Wasp. The libel must be dismissed, but without costs.